Case number 20-1398 et al. American Federation of Government Employees, AFL-CIO Petitioner versus Federal Labor Relations Authority. Mr. Shah for the petitioners, Mr. Peters for the respondents. Good morning, counsel. Mr. Shah, please proceed when you're ready. Good morning and may it please the court. I'm Parash Shah on behalf of the petitioners. In a one paragraph analysis, a two to one majority of the Federal Labor Relations Authority reversed over 33 years of precedent and eliminated the statutory right to union-initiated midterm bargaining. It relied upon the absence of that statutory right to then hold for the first time that a zipper clause proposal is a mandatory subject of bargaining and may thus be bargained to impasse and potentially imposed into a term agreement over the union's objections. For three reasons, the authority's threshold ruling on the midterm bargaining right was arbitrary and capricious. First, the authority failed to reasonably explain its departure from its decision in interior. Second, the authority failed to address important aspects of the statutory question before arriving at its conclusion. And third, the authority failed to reasonably explain its departure from its decision in OPM. If the authority's ruling on the midterm bargaining right is reversed, the zipper clause ruling that explicitly relies upon it must also be set aside. That ruling could not be sustained on the authority's rationale in this decision, which depended upon the absence of the midterm bargaining right. On the first point, the authority failed to reasonably explain its departure from interior. Mr. Shah, you talk about the failure to explain a departure, but under the Supreme Court's decision in FCC versus Fox, there isn't a special higher bar to explain a change in policy. The policy just has to be explained. There just has to be an awareness that the policy is being changed, which I believe the policy is explicit about that, and the new policy has to be explained. And your brief cited to older precedent that perhaps required more for a change in policy, but I just wonder whether you could speak to whether that line of argument in your briefing survives the Fox recalibration. Yes, Your Honor. This court held as recently as 2020 that reason decision-making requires that when departing from precedent, an agency must offer a reason to distinguish that approach, and it's the latter that didn't happen here. The singular reason that the authority gave for rejecting the approach in interior, that single reason simply cannot withstand scrutiny. In interior, the authority stated that Congress's findings in Section 7101A regarding collective bargaining were as applicable to midterm bargaining as term bargaining, and that nothing in the reframed that observation slightly. It stated that interior concluded that the statute's text does not distinguish between obligations for term and midterm bargaining, and then it went on to call that view flawed, even though it's a textually accurate view that's shared by the Supreme Court. It went on to say that the statute's text at 7114A4 clearly establishes term bargaining, but not midterm bargaining. But as the Supreme Court stated, that provision and other sections of the statute speak only to collective bargaining without distinguishing between types, and that provision in particular could easily be read in the view of the Supreme Court to encompass midterm bargaining. The authority offered no other reason for its departure from interior, and it ignored the primary bases of interior's holding, which were Congress's findings in Section 7101A and the statute's undisputed aims of strengthening unions and equalizing the balance of power at the bargaining table. If we were to agree with you, Mr. Shaw, that the policy statement does not do enough to explain why it takes a different view from the view in interior, as I read your brief, you think that alone would establish that zipper clauses are permissive rather than mandatory subject of bargaining. Is that your position? Your Honor, our position is that if the authority's ruling on the midterm bargaining right is set aside, that ruling is the foundation for the authority's subsequent conclusion on the zipper clause issue. I'm sorry, I think I missed your last phrase there. Your Honor, I was just saying that the authority's zipper clause ruling, it depends upon its midterm bargaining right ruling, in particular, the absence of that midterm bargaining right. But the standard for the existence of the midterm bargaining right is, it seems to me as I read our cases, lower than the standard for establishing a permissive bargaining subject. Under the NTEU decision of our court from 2005, we adopted a standard that a right that is going to be a permissive subject of bargaining must be established explicitly or by unambiguous implication in the statute. And that's not a standard that you grappled with in your brief. And I'm just curious what I'm missing. It just seems to me that there are sort of two tiers. One is, is there a right as a kind of default matter, which is the question that addressed. And then the separate question, which I think I'll acknowledge was not resolved, is the question whether something like a zipper clause is a permissive or mandatory subject of bargaining. Your Honor, it accurately states the standard and the two different tiers. Our argument here is that, you know, viewing the authority's rationale below, looking only at that analysis that the authority performs, and I believe one to two sentences, it depends upon the absence of the midterm bargaining right. So if that ruling is set aside and the right is restored, there is no longer a basis for that zipper clause ruling. And what is that right? If that right is restored, you're saying that right means that you have a unilateral entitlement, which means that it's a permissive subject. Is that right? Your Honor, we do make that case in the brief that the midterm bargaining right would be a unilateral right. But what's critical here is the court doesn't need to reach that question and undergo that unilateral rights analysis itself. It is sufficient here that the authority in this decision, its rationale for its unilateral rights analysis is on its face deficient. But you think that it follows that it's a unilateral right as the night follows the day. I think that's the logic of your argument. And that may well be right, but it seems like you're tying the two things together so that if there's an overturning that that necessarily reinstates a regime under which, as you understand it, there's a unilateral entitlement on the part of the unions. Your Honor, what we are arguing is if the midterm bargaining ruling is set aside, the basis for the authority is a clause ruling likewise falls. And the result of that would be the previous regime where there was a right that unions had to bargain to initiate midterm bargaining that was a unilateral right. So I have one question about that, which is if you tie if I in the way you're conceiving of it, then in the authorities order that's under review, they also have some explanation about the zipper clause. And that's at page J77. There's a paragraph about the zipper clause issue. And isn't the flip side of your argument then that what the authority says about the zipper clause can also be used as a basis for explaining why there's a departure from interior? Because it seems to me what you're doing is you're saying all we look at is this one paragraph with this one textual point and we just disregard everything else because everything else has to do with some other subject, the zipper clause. But then your own argument is that the two are intimately tied. So why wouldn't the explanation of the zipper clause also feed back into the explanation of why there's been an adjustment from a departure from interior? So two things there, Your Honor. I certainly agree there is a relationship between those two rulings and those two issues. But if you look at that paragraph on the zipper clause, the few sentences of analysis that are there, it simply refers back to the midterm bargaining analysis. It simply says because of its elimination of the midterm bargaining right, neither party would have to waive a statutory right. Therefore, there's not an issue in terms of having a zipper clause proposal be a mandatory subject to bargaining. Let me just- I'm sorry. No, no, no. Finish up. Okay. One more, Judge Fuller. My apologies. So in that paragraph though, on the zipper clause paragraph, it traces back, but then there's an explanation of why in the authority's view, that would be a good thing for both parties. There's an explanation of here's how parties would react to that and here's the sorts of things that parties would do. And I got the sense from that, that that's the authority's effort to explain why it thought this new to wind up. I believe you're referring to the authority's alternate basis for its zipper clause ruling, which deals with the phrase in section 71, 14A4 regarding appropriate techniques for bargaining. Right. It's the moreover paragraph on J77. That's correct, Your Honor. We view that paragraph as, I believe this is accurate, an alternate basis for the authority's zipper clause ruling. One that's entirely unreasoned. It's so vague, it's hard to even understand what the upshot is. I don't believe that ties back to the ruling on the midterm bargaining right. It's an independent basis. And why wouldn't it? If it's an independent basis, even if it's an independent basis, under your conception of it, if the zipper clause issue is intimately tied to the threshold question in your schematic, then why wouldn't that also be a basis for explaining why there's a departure from interior? Is it just that you think standing alone is unreasoned and so we should disregard it at all? Or do you think conceptually it doesn't work to factor that into whether there's been an adequate explanation of the departure? Both of those things, Your Honor. One, it is entirely unreasoned as we discussed in our brief. Second, I do not believe this paragraph speaks to interior at all, either explicitly or implicitly. And so for those two reasons, I don't think that this paragraph would help the authority explain this departure from interior. Your Honor. I just wanted to clarify, you had answered a question from the Chief Judge about the two issues, rising and falling, together. And I had thought when you were answering a question from me that A, you acknowledged that there are two separate standards. The standard for establishing the midterm bargaining right that was established in interior is not as demanding as the standard for establishing a unilateral right that would be a permissive subject of bargaining. And, but that on this record, I thought your point was that on this record, given the way the authority tied the two together, if the authority's questioning of its prior holding in interior were to fall by the wayside, that given the way this opinion is reasoned, the and generally that the one follows the other. Otherwise I'm not understanding your acknowledgement that there are two separate standards and that the standard for establishing that a right is unilateral is more demanding. Your Honor, I'm sorry. The internet connection broke up a bit during your question. I heard all of it. But if I could just say, our baseline position is that it's one thing to sort of, to establish a right, be it the statutory right or the unilateral right that's required for the, on the zipper clause issue. Our position in this case is that it's the path that the authority took to its destination in each instance. With the midterm bargaining right, the reasoning that put forth is simply insufficient to explain its departure, nor did it take into account important aspects of this statutory question before arriving at its conclusion. And that, that is why the midterm bargaining ruling cannot stand. Sorry, please go ahead. I didn't mean to interrupt you. And I was just going to add that looking, looking narrowly at the authority's rationale and its decision for its zipper clause ruling, it does depend upon the absence of the midterm bargaining right. As the authority has framed it. So my follow-up question is just, given the Supreme Court's decision in local 1309, that the statute is ambiguous with respect to protection of the basic midterm bargaining right that the authority then following that decision recognized, how could it be that the statute unambiguously creates a right making the zipper clause issue permissive? Your Honor, what I would say there is while the standard is for the unilateral right is must be either explicit or vested by unambiguous implication, the limited case law applying that standard. And we're talking about, you know, two, two DC circuit cases referencing that standard. I believe only a couple of authority cases applying that standard in terms of this application. It has not been formalistically applied both in our comments, as well as our briefs to this court. We discussed the authority's decision in FDA, which is a decision that this court discussed at length in its 2005 and to the FLRA decision. That case, I believe, shows that notwithstanding how that standard is phrased, it is rather, it has been pragmatically applied by the authority. The authority in this decision below and in its briefs to this court, it ignores that case. But again, I do believe that Your Honor's looking strictly at the rationale below do not need to get into a unilateral rights analysis in the first instance. All right. Just one other question, which is the dissenting member made a point about reliance that a lot of existing bargaining agreements were bargained with the assumption that under interior, there is a statutory right to midterm bargaining. And I was a little surprised because I don't see in your brief an argument based on reliance and based on the authority's policy statement, failure to take reliance into account. Am I missing something? Are you making an argument that reliance also counsels against the authority's decision to pitch the interior holding overboard? Your Honor, I would agree with that conclusion. That's not an argument that we raised below or made in our briefs to this court. But this is certainly a sea change, 33 years of precedent out the window. And without question, that's something that changes the game for unions. It affects their standing in the workplace. Our members depend upon us to be able to bargain over new and unforeseen things that come up during the term of an agreement. Can I ask just one question? I want to make crystal clear. It sounds like from your argument, but I don't want to make any assumptions. Is the relevant world here divided into two exclusive categories, permissive rights? I'll call them permissive ones and unilateral slash mandatory bargaining rights. So permissive and unilateral. Is that the world or is there a third option of something called a statutory right that might provide like a default rule or something if something just doesn't come up in bargaining at all? Your Honor, it is sort of the two worlds, mandatory and permissive. In terms of statutory rights, that is the larger umbrella under which there are unilateral rights and other statutory rights. Okay. Unless my colleagues have further questions for you, Mr. Shah, we'll give you a minute to address the authority, Mr. Peters. Thank you. And may it please the court. I think that the authority, the outcome on the unilateral rights point is more or less, was more or less dictated and whether zipper clauses are mandatory or permissive subject of bargaining was all but involves a statutory right, but whether that right is unilateral or not. And it emphasized again, four different times that a unilateral right must be manifested in the statute, either explicitly or by unambiguous implication. The Supreme Court, the second part of that logical structure is the Supreme Court in the NFFE case said that it's not unambiguous. There's no statute. It reviewed the policy, it reviewed the legislative history, it reviewed the text. It said that it's ambiguous, that that's the holding. And then the, so the conclusion from that has to be under NTU 2005, it has to be that a zipper clauses are mandatory subjects of bargaining. And I think that's... We have to deal with the decision that the authority wrote here. And it's the first part of his decision was that it is necessary, necessary as the authorities were, necessary to first address whether there's a statutory right to midterm bargaining under the statute, right? Before it could even get to that zipper clause question. You're kind of making an argument that it sounded to me like we can ignore the first half of the authority of opinion and just look at the second half, but they found the one necessary to getting to the other. You agree with that, right? That was the language? Yeah. Well, that's, it was necessary for the authority to analyze the scope of the midterm bargaining, right? Because NTU 2005 makes it mandatory to analyze midterm bargaining, right? To look at that, you have to look at whether the right is established in the statute unambiguously. Okay. And then the only reason given for that I discern for rejecting the existence of a midterm bargaining right in its, in its, and I keep using the same word, right? In its own right, in its own way that exists independently on whether it's negotiated in or out of the contract. So the only basis for rejecting that was where was the rationale said it's flawed. The authority found that the statute does not um, can you tell me where they said that? Well, the, the unilateral, the authority engaged in the unilateral rights analysis on page, uh, J 76, when they noted that the statute presumes that all matters related to conditions of employment are mandatory subjects of bargaining, unless the text explicitly or on a, by an ambiguous implication, that's in a party on qualified or unilateral, right? As explained above the statute is no, no, no, no. I'm sorry. I wasn't clear in my question. The rationale for jettisoning this many decades of recognizing this under the statute, a right to midterm bargaining was this sentence. Um, two sentences, the authorities, uh, first consideration to support that conclusion was flawed. The authority found that the statute does not distinguish between obligations for midterm and term bargaining. And, um, can you tell me where in that, uh, the interior FLRA decision, they said the statute does not distinguish between the statute does not distinguish between obligations for midterm and term bargaining. Well, that was the, the beginning of the discussion in interior, uh, with the text and it noted that the text does not distinguish between, uh, midterm bargaining and term bargaining. Um, and that, that was the starting point of, of the analysis. So for purposes of the zipper clause issue interiors, wait, where does it say that when they cite page 51, I don't, I guess I'm not reading them saying that it's unclear as to either it's unclear as to both what they say is many of the rationales that lay the groundwork for term bargaining or what's presumed to be term bargaining in the statutory scheme apply are equally applicable or as applicable as a term to midterm bargaining. But that's not the same thing as saying, I'm just confused as to what this rationale is. Right. Does not distinguish between obligations. I mean, if, if what they're saying is, um, the statutory tax when everyone knows going into it, it was ambiguous as to midterm bargaining, at least in the Supreme court's Chevron sense of phrase. Everyone knew that going in, no one was disputing that, but they've given a reason here. And I don't see in the opinion them saying, um, the statute doesn't distinguish between midterm and term bargaining, as opposed to, wow, we looked at all this stuff that's in the statute and many of those rationales that are there seem to apply equally to midterm bargaining. That's a very different proposition than what the authority assigned, unless I'm misunderstanding something. Right. Well, I think the authority, uh, noted that, um, it, it stated that all matters relating to conditions of employment are mandatory subjects, unless the tax explicitly are by an ambiguous implication. Are you talking again about the zipper clause analysis on page 76? Yes, I see. I'm trying to keep you focused on page 75 though. And they're, they're, they're, all they're giving is something that was an error in the FLRA decision prior to your FLRA decision. Right. That discussion is geared towards determining whether interiors analysis establishes a zipper clauses as a permissive only subject to bargaining based on the right or a unilateral right to engage in midterm bargaining. Wait, so you're saying this paragraph here is all explaining why zipper clauses are a subject of bargaining? Yes. But that's not what the authority said. They said, we have to do this in two steps. First, we have to address, and I thought you had agreed with me. It was necessary first to address whether there is, uh, whether there is this right midterm right to bargaining under the statute. Right. Well, I think the, the authority explained in footnote 35 that the, the, in their requested issue here, the question of the party's obligations to negotiate zipper clauses has been squarely raised. And because those obligations depend in some respects on whether the statute itself compels midterm bargaining, we find it necessary to address the midterm bargaining requirements in order to properly evaluate whether zipper clauses are mandatory subjects of bargaining. So we know that this discussion in that paragraph is geared towards the zipper clause holding. And we know that also because the authority said several times, we find that zipper clauses are mandatory subjects of bargaining. We find that all matters related to midterm bargaining obligations are mandatory subjects of bargaining. That was the authority's holding in this case. I don't think that there is any broader holding here, other than zipper call, all matters related to midterm bargaining obligations are mandatory subjects of bargaining, not permissive subjects, any issues relating to other situations as the authority noted, they have to even address, um, the status of midterm, the nature of midterm bargaining under the statute in order to hold that whatever it is, it's not expressed in the statute. Supreme court already answered that question, nor is it unambiguously implicated in the statute. Supreme court already said it's ambiguous. So why did they have to say anything more like attacking, um, and, um, walking away from the interior decision like they do on page 75? Why was that even necessary? Well, there, there is under the theory you're giving, right? Well, the reason was because the, um, in the comment and he's comment, they argued that interior had established midterm bargaining as a unilateral right. And so the authority is beginning by noting that interior does not establish, um, that midterm bargaining is a, you know, unilateral right explicitly. Why did they have to say there was something flawed in the interior decision? Um, that, I mean, that was the, the formulation. I mean, it's flawed in, in so far as it would suggest that, um, zipper clauses are permissive subjects only, right? Right. That decision didn't address zipper clauses. I thought everyone agreed that they didn't talk about it there. So why is it flawed for a particular reason that just doesn't seem to bear out right. Well, to the actual interior decision, to the extent that zipper to set that interior can be read to establish that there's an unambiguously unambiguous right to midterm bargaining, the statute it's flawed. Uh, Mr. Peters, I'm, I'm understanding you in your argument. And also this was my impression from the brief that the policy statements, to the extent the policy statement purported to overturn interior, you are no longer defending that. Um, to the, I think the, the issues related to whether there's a third position here, whether maybe there's a, it's not a unilateral right, but maybe it's, it's, there are circumstances where parties are required to bargain midterm, even absent a reopener clause, absent, et cetera, et cetera. I don't think that this policy statement addresses issues other than whether zipper clauses are mandatory subjects of bargaining. Oh, no, that's not the way it reads at all. It, it reads first, we overturn interior second, on that basis, we hold zipper clauses are mandatory subjects of bargaining. And my question is just to the extent that, that it reads that way. And I, maybe you disagree that it does, but if one were to reasonably read it that way, are you now saying, no, no, we never intended to dislodge interior. All we intended to do was differentiate because there's a higher standard under NTEU 2005, the question, whether zipper clauses are a mandatory or permissive subject of bargaining and to establish that they're mandatory. That's your position here today. Yeah. My position is that this, our position is that, yes, this, this is geared towards determining whether zipper clauses are mandatory or permissive subjects of bargaining. That was all that was resolved by this ultimately geared towards that. That's what you ultimately wanted to do. But along the way, it just seems like the whole setup of the analysis is that it, and as necessary predicate in the way that the authority set up its analysis is to address the question about midterm bargaining, not just about zipper clauses, but about the status of midterm bargaining. That's still, isn't that the entire architecture of the decision? I think that the, the architecture of the decision is that the authority looked to midterm bargaining obligations in general, in order to, to determine whether they precluded the holding that zipper clauses are a mandatory subject of bargaining. That was what this analysis was geared towards. I think that as far as, as far as other issues relating to, as the authority noted in a footnote, other issues related that the, this policy statement doesn't address, can address the full scope of midterm bargaining issues that might arise under the statute. And it doesn't address every context. And it notes that an issue arising where there is no reopener clause, the matter isn't covered by an agreement, et cetera, et cetera, that it would only arise under, you know, specific circumstances. Can I ask this, the sentence on 75, we find after, after identifying what they consider a flaw in interior, the interior decision, they say, we find it more appropriate to recognize that the statute neither requires nor prohibits midterm bargaining. Now that sentence, is that sentence replacing interior, the interior holding? I think that's a statement of where the authority of the general rule that the authority is creating is that this, of course it is, is that statement displacing interior because of interior's flaw? I think it's, it's, again, I don't know that it is displacing interior under all circumstances. Well, can they coexist? I think that they can. I think that the, the duty to bargain questions, which were not addressed in the general broader midterm bargaining, which again, I think the, this is says that it can't discuss every situation under the statute, but I think creating a regime where there is a, a mid reopeners and zippers are mandatory subjects of bargaining means that parties should settle these issues during term negotiations. There's no reason not to because they're mandatory subjects of bargaining. So I think that's, that's what the, that's the, the rule that, that this decision is creating. I think under some circumstances. So are you, do you disagree with Mr. Shah? I asked him this, this question of whether the world's divided into two buckets or more, is the world divided into permissive rights and unilateral rights, or when you say it's not covering everything and somehow the statutory holding interior, although flawed is somehow still with us, that there's some third bucket of statutory rights. There, there may, there may be, we don't, I mean, the, the, well, are you reading, are you reading this decision is I'm just trying to understand the way you said the more appropriate sentence is not displacing interior was to suggest that there is a third bucket, but I don't, I've never seen that before. So I'm trying to understand how you get that out of here or what your basis in authority. Well, I mean, the, the third bucket was not, as you know, it was not raised by the unions. It wasn't raised in the comments either, but there is, we know there's a third bucket because the covered by doctrine is in the third bucket, right? They're covered by doctrine is a statutory right, but it's not a unilateral, right? There are lots of grievance proceed, a broad scope grievance procedure, maybe a statutory right under some circumstances, but it's not a unilateral. Is a statutory right, as opposed to a way of analyzing whether or not something is eligible for midterm bargaining. Right. I mean, in certain circumstances, agencies have a right to invoke the covered by doctrine, official time proposals. For example, there's a statutory right. Oh, I'm sorry. Okay. I misunderstood what you're talking about, right? There's a statutory right to official time. It's not a unilateral, right? Meaning that that official time proposals are not permissive subject to bargaining. There's a statutory right to impact and implementation bargaining proposals to limit the scope of EINI bargaining are not permissive subjects or mandatory. Okay. So to be clear then, so you're reading of this paragraph on 75, and I guess there's a line or so on 76, but the section of the decision focused on the prior decision in interior and the status of midterm bargaining, which you're telling us what this language means is that there is still a statutory right to midterm bargaining under interior. That statutory right still exists, even if. Right. It exists until there's a specific case that comes up that doesn't involve zipper clauses or reopener clauses are covered by, I mean, to give you a sense of how abstract this is, there isn't even a single ULP charge pending before the authority where somebody has raised this as a defense to midterm bargaining, this policy statement saying, we don't have any obligation to bargain midterm because of this policy statement. I mean, this is the argument that this policy statement abrogated completely midterm bargaining under all circumstances. That's several, several steps down the road from this policy statement, this policy statement upset, as it says in its first paragraph, it holds that zipper clauses are mandatory subject to bar. I just want to make sure in those later cases, you're telling me the authority it's positioned going to be, it's going to be that yeah, interior is still good law as the existence of the statutory right. Right. I think parties will have to raise. No, no, no, no. My question is to you. Right. Is it just to be explicit? Sorry, sorry, sorry, just to make sure we're talking about the same thing, because this is really important to me. In a future case, if someone were to come in and say, well, there's still a statutory right to midterm bargaining. And that was unaffected by this general policy statement. That's so in fact, this general policy statement still recognizes and preserve that statutory right? The authority will say yes. Yes, I think that the authority will it? Yes, I think that this, again, binding precedent on whether zipper clauses are mandatory or permissive subjects of bargaining. This is not finding precedent on whether there can ever be a right to bargain midterm under any and all circumstances. I think the authority disclaimed that it was speaking, it was just that it was giving a definitive statement on midterm bargaining under all circumstances. I think that's a case specific inquiry. And, you know, there's still precedent out there. The interior is still out there on that question. This is a zipper clause ruling. It holds that zipper clauses are mandatory subjects of our mandatory subjects of bargaining. That was all that's all that it holds. And it describes the regime that it's creating as one where every everything related to midterm bargaining is a mandatory subject of bargaining for term bargaining and should be settled that way. And it gives lots of justifications as to why that regime is good, why it's good to give parties it enhances collective bargaining to give parties the ability to control the scope and timing of negotiations over the term of their contract. And that that's what this policy statement is geared towards. Does the authority's decision apply to the general this general statement like this apply only prospectively? Or does it apply to existing agreements? Um, I why again, I think that it doesn't include anything about the I don't think there's anything really here to apply retrospectively, because it's, as I said, this is a holds a zipper clause are mandatory subjects of negotiation. So if parties out there were already well, no, you've got an existing collective bargaining agreement. And, and the union comes and says, hey, we need midterm bargaining on COVID. This thing came up, you know, what the COVID policies are work from home policies or something like that within the agency, we need to talk about those midterm. And your view that that could be forced to the impasses panel now, if they started that bargaining and couldn't agree? Or do they? Or does this only apply to new once a new collective bargaining agreement starts? I think this means that this means that a zipper clause proposal and no, no, it's not my question. Right? Forging something to the impasses panel. forcing a collective bargaining agreement that was negotiated under interior as a settled block before this decision. Right to midterm bargaining. There's no zipper clause, it's going to solve this problem for us. An opportunity and necessity for midterm bargaining arises because of like the COVID pandemic, right? So they start bargaining. And they're unable to agree. And so would that be something that would get pressed the impasses panel or impasse panel or not? I think that if there again, if there's no reopeners clause, there's no covered by argument. None of there's, there's no, it's very clear that COVID stuff, of course, there's nothing covered. Right? Well, I mean, there are a lot. My hypothetical is no relevant zipper or specifically overruled in a specific. So they could so if they aren't able to come to agreement under my hypothetical, would that go to the impasse panel or not? It could go to the impasses panel. If they can't come to agreement, would it go to the impasse panel? Right? It could it well, I mean, it wouldn't, there's no, but yeah, yeah, I what you're saying is, is interior still good law in the area? No, what I'm asking is whether this applies to this, if one reads this as changing the landscape, I get that you don't, but if one reads it as changing the landscape, would that change in the landscape apply to existing collective bargaining agreements or only prospect? So, so re reading this, not the way that the way that we're reading it, you're reading it now. Yeah. Okay. Definitive. So this is be reading this as, as the last word on, on midterm bargaining, can our, our issues related to midterm bargaining now, entirely permissive and, and any effort to get to the impasses panel draws a ULP. No, I don't, I don't think that that's where we end up from this policy statement. Okay. Yeah. Do my, let me make sure my colleagues don't have additional questions for you. I had one more, but I thought I was talking too much. I was talking. Of course. Go ahead. What is appropriate techniques mean? Is there any authority decision defining that phrase? I know they referenced it in this decision, but apart from this decision, I think what this is, what this calls to mind about the appropriate techniques is a ground rules agreements. So a ground rule proposals, which say that control allow parties to control the scope and timing of term negotiations. And so what, and those would be appropriate techniques. Now, what is that techniques are sort of the procedures and rules for bargaining, but not actually the content. Right. Those are rules. Ground rules are rules for bargaining, right. So not the content of the bargaining, right. For that, for us, just if we wanted to so yeah, I, I, I, that's a really good question. I can give you, give you more on that if you would like on, on the techniques language here. But like I said, I think what this is, this is certainly something that was brought up in the comments was that ground rules proposals are you know, are mandatory subjects of bargaining because they control the scope and timing of negotiation. So what the authority is here saying is that these can be thought of as sort of like a ground rules proposals, but for the term, uh, when bar topics are going to be brought up during the term of the agreement. Um, but yes, I can get you sites on that. Thank you. That's all I had. Sorry. Okay. Thank you, Mr. Peters, Mr. Shaw. I'll give you start with two minutes for rebuttal. Thank you, your honor. Just a few quick points. I want to begin with this new view as spouse today that the decision below did not depart from interior, that interior is compatible with the court's rationale below, sorry, the authority's rationale below that simply just, that simply cannot be true. Here's what the authority said in this decision below. I'm quoting the statute, neither requires term bargaining. Where are you quoting from? This is the language that judgment level is a 75. Yes. And here's what the authority said. The statute neither requires nor prohibits midterm bargaining. Instead, it leaves midterm bargaining obligations to the parties to resolve as part of their term negotiations and quote. In other words, they need to work out what's going to happen midterm at the bargaining table. If they want to, if a union wants to be able to initiate bargaining midterm, it needs to propose that and secure that right contractually at the bargaining table. That is incompatible with interior, which said the statute will be interpreted to require agencies to bargain midterm over initiated proposals that are not covered by the term agreement, assuming no waiver. Those two things are incompatible. Interior was overturned. And that, that was the basis of our, all of our arguments to this court in our briefs. Nowhere in the authority's briefs to this court did it say, no, wait, hang on. Interior is still good law. This was a new position thrown out today that's simply incompatible with the authority's decision. Uh, second, your honors, as I think today's questioning highlighted, the only basis that authority gave below for saying that interior was flawed simply doesn't hold up. If you, uh, look at page 51 of interior, which is what the authority cited below for its description of interior and the subsequent conclusion that its rationale was flawed. If you look at that page, number one, the authority below mischaracterized what interior said. And second, interior gave a textually accurate view of the statute. Third, I would add your honors that as the, as the questioning today showed, the authority did not need to revisit its midterm bargaining precedent to answer the zipper clause question. It simply could have consulted that so many times over the last several decades, it could have reaffirmed the midterm bargaining right, but then went on to do the unilateral rights analysis that it did with the first course and departing from that precedent. And why couldn't we just, uh, firm the zipper clause holding based on the alternative argument on JA 77, uh, regarding this, um, techniques point that assist in negotiation to the extent that that's a freestanding rationale that's disentangled from interior. Why is that inadequate? Your honor, I would agree that it's a freestanding rationale. Our arguments in our briefs is that it's simply on a reason, but there's nothing, the authority latched onto a single clause in 7114 or 7119, which is referenced in that section. Nothing speaks to the mandatory versus permissive issue. Neither of the sections of the court, the authorities zipper clause ruling, unless there are further questions. I just want to get your response to, um, make more confused rather than less. Now, uh, you said the world's divided into two buckets. Um, Mr. Peter said, no, there's this third bucket. You can have these statutory rights that are neither, neither permissive nor unilateral. They just have their own distinct status. And I understood him, right? I hope I got it right that there's a third bucket. What is your response to that? Your honor, when it comes to this statutory rights, that's the larger umbrella under which you have rights that are statutory, which are either unilateral rights or other statutory rights. That's, that's the division when it comes to the, sorry, I had an internet glitch on my end. So you said there's either, you got your pool of statutory rights and they're either permissive or, and that's where your, I got my internet wrinkled. Your honor, there are other unilateral rights that cannot be the subject of a mandatory bargaining proposal, or there are other statutory rights, um, that could be the subject of a, of a mandatory bargaining proposal. They're either permissive or unilateral. Correct. No, permissive is unilateral. Yes. Permissive or non-unilateral. We all understand. Non-unilateral can be a mandatory bargain. That's correct. Your honor. When, when there are statutory rights, there are those two there, but when it comes to statutory rights that are either, are you aware of any authority that has ever talked about a third bucket? I'm not your honor. The authority, authority, I guess. And there's certainly, there's certainly no discussion of a third bucket in the decision below. Do you think there is a category of statutory rights? It sounds like you're saying, it's just that it's on a different axis than permissive versus mandatory, that statutory rights either fall into the permissive bucket or they fall into the mandatory bucket. Yes. When it comes to rights under the federal sector labor statute, they are either unilateral rights that don't have to bargain over, they're permissive, or they fall into this other category where they could be the subject of a mandatory bargaining proposal. But the other category is mandatory. Yes. Right. Okay. Just to get the terminology right in my mind. Sorry, I was messing it all up. No, no, there's a lot of different words going on in different directions, but okay. Unless there are further questions from my colleagues. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Millett, Pillard